29 F.3d 634
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Eddie SNEED, as Special Administrator of the Estate of
Herbert Webb Sneed, Deceased, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 93-15095.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 17, 1994.
Decided June 21, 1994.
 
 Before: GOODWIN, PREGERSON, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Eddie Sneed, wife of decedent Herbert Sneed, appeals the district court's grant of summary judgment to the United States in her Federal Tort Claims Act (FTCA), 28 U.S.C. Secs. 1346(b), 2671, et seq., wrongful death action. Herbert Sneed died two days after Dr. Larry O'Connor, who was under contract to provide radiological services at Naval Hospital in Oakland, performed a procedure involving the replacement of a nephrostomy tube.[1] The district court concluded as a matter of law that O'Connor was an independent contractor and that the government accordingly was not liable for his torts. The court also rejected Sneed's argument that the government should be equitably estopped to assert O'Connor was a government employee. We have jurisdiction, id. Sec. 1291, and we affirm.
 
 
 3
 * We review de novo the district court's grant of summary judgment. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990); State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir.1989) (per curiam). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989); Judie v. Hamilton, 872 F.2d 919, 920 (9th Cir.1989).
 
 II
 
 4
 The FTCA provides a limited waiver of the United States's sovereign immunity for certain torts caused by "any employee of the Government while acting within the scope of his office or employment[.]" 28 U.S.C. Sec. 1346(b). An "employee of the government" includes "officers or employees of any federal agency." Id. Sec. 2671. A "federal agency," however, "does not include any contractor with the United States." Id.
 
 
 5
 The government argues, and the district court held, that the undisputed facts show both that the agreement between O'Connor and the hospital provides specifically that O'Connor is an independent contractor and that O'Connor "exercised his own independent judgment in diagnosing and treating patients," and for these reasons he must be deemed an independent contractor. After the district court's decision and the close of briefing in this appeal, we decided Carrillo v. United States, 5 F.3d 1302 (9th Cir.1993). That case is directly on point and requires us to affirm the district court's holding.
 
 
 6
 Carrillo involved an FTCA claim against the government based on the alleged negligence of a doctor whom the Army contracted to provide services at a military hospital. We repeated our rule that " '[t]he critical test for distinguishing an agent from a contractor is the existence of federal authority to control and supervise the "detailed physical performance" and "day to day operations" of the contractor, and not whether the agency must comply with federal standards and regulations.' " Id. at 1304 (alteration in original) (quoting Ducey v. United States, 713 F.2d 504, 516 (9th Cir.1983)); see also United States v. Orleans, 425 U.S. 807, 814 (1976); Logue v. United States, 412 U.S. 521, 528 (1973). Although we had not previously considered the application of this rule "where a medical facility operated by the federal government contracts for the services of a private physician[,]" we observed that "[e]very circuit that has addressed the issue ... has applied essentially the same 'control' test mentioned above[,]" and that the courts were "unanimous in holding that a contract physician is not an employee of the government under the FTCA." Id. (citing cases). Relying on the logic of those cases, we concluded that because the Army hospital "did not control [the doctor's] actions in diagnosing and treating patients, [the doctor] was not an employee of the government when he treated [the decedent]." Id. at 1305.
 
 
 7
 The reasoning in Carrillo applies here. The uncontroverted declaration of Dr. Donald Jensen, who at the time in question was head of the Radiology Department at the Naval Hospital, states that he "did not directly control the professional aspects of the radiological services which Dr. O'Connor provided, including those involved in the exercise of professional medical judgment, the diagnosis of patients, or the specific medical treatment provided to patients." Sneed points to numerous indicia of control, including, inter alia, that O'Connor's only office was at the hospital; that O'Connor received a set salary during his vacations; that he worked according to a daily schedule mandated by the hospital; and that he followed Jensen's general directions. But as in Carrillo, "neither [the Naval Hospital] nor any other agency of the federal government had any control over [O'Connor's] practice of medicine." Id.
 
 
 8
 Sneed urges us to follow dictum in Lurch v. United States, 719 F.2d 333 (10th Cir.1983), cert. denied, 466 U.S. 927 (1984). The Tenth Circuit in that case observed that
 
 
 9
 [b]ecause a physician must exercise his own professional judgment, no one controls the detailed physical performance of his duties. Given this, by strictly following the traditional control test it is doubtful whether a physician could ever be found to be a federal employee under the FTCA. Yet such a result would not comport with Congressional intent. Hence it seems logical that some modified control test or some different test should apply with respect to physicians.
 
 
 10
 Id. at 337 (footnotes omitted). The court ultimately decided not to reach this question, since the specific contractual agreement and its application in practice placed the physician in issue "outside the parameters of an employer-employee relationship with the Government." Id. at 338. That doctor performed his services pursuant to a contract between the government hospital and the University of New Mexico School of Medicine; the University, in turn "had the discretion to choose which physician or physicians would fulfill the University's obligations." Id. The court held that the FTCA's independent contractor exemption applied to a physician employed under this type of contractual relationship. Id.; accord Broussard v. United States, 989 F.2d 171, 175-76 (5th Cir.1993) (per curiam) (declining to define "outer limits" of control test because physician worked at hospital through another entity).
 
 
 11
 We rejected an appeal to the Lurch dictum in Carrillo, citing the fact that the Carrillo physician "was a private practitioner whose employer contracted to provide care in a government-operated hospital." 5 F.3d at 1305. Although O'Connor's contract was directly with the Naval Hospital, we reached our principal holding in Carrillo (that the unmodified control test applies to physicians who work in government hospitals) without reference to the fact that the physician worked for a third party. Id. at 1304-05. Indeed, in reaching that holding (as opposed to distinguishing Lurch ), we expressly relied on more recent Tenth Circuit authority where that court applied the control test to a physician who provided his services pursuant to a contract between the government hospital and himself. See id. at 1304 ("[T]he court reasoned that '[t]he Army controlled little about the end result or the manner and the method of reaching a result. Clearly, the end result (i.e. the outcome of surgery) was beyond the Army's control.' ") (second alteration in original) (quoting Lilly v. Fieldstone, 876 F.2d 857, 860 (10th Cir.1989)).
 
 
 12
 Under Carrillo, therefore, O'Connor was an independent contractor and the FTCA does not provide Sneed a cause of action.
 
 III
 
 13
 The district court also rejected Sneed's argument that the government should be equitably estopped to assert that O'Connor was not a government employee. In this court, Sneed insists that she does not rely on an equitable estoppel theory, but nevertheless urges us to follow the rationale of two district court cases applying equitable estoppel in similar circumstances. See Utterback v. United States, 668 F.Supp. 602 (W.D.Ky.1987); Gamble v. United States, 648 F.Supp. 438 (N.D.Ohio 1986).
 
 
 14
 In Carrillo, we specifically rejected Utterback and Gamble as anchors for an equitable estoppel claim. See 5 F.3d at 1306 ("Gamble and Utterback confuse affirmative action with affirmative misconduct. In this circuit, the government's conduct must be wrongful for the government to be estopped."). Sneed argues that those cases stand for a broader proposition--that a court should look beyond the formal characterization of the relationship stated in the contract. The control test, however, does just that. Applying that test as construed in Carrillo requires that we affirm the district court's judgment.
 
 
 15
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Sneed originally brought a wrongful death action against O'Connor in state court. The state court dismissed the suit as time-barred